FOURNET, Chief Justice.
 

 This suit was instituted by survivors of Charles Ray Draper
 
 [1]
 
 against the State
 
 *547
 
 Farm Mutual Automobile Insurance Company, the public liability insurer of Carl S. Swilley, in whose automobile Draper met his death on or about May 27, 1954, the allegations of the petition being that Draper was riding as a guest passenger in the car which was being driven by Swilley on U.S. Highway 61 when an accident occurred; that on the following morning the said automobile was found completely submerged in water in a canal paralleling the highway, both occupants being dead at the time of discovery, and “That petitioners are without information regarding the actual happening of the accident, but the circumstances surrounding the discovery of the vehicle and its deceased occupants indicate that said accident and the resulting death of Charles Ray Draper were proximately caused solely and exclusively by the negligent and reckless operation of said vehicle by Carl S. Swilley, and that the accident would not have occurred in the absence of his negligence and recklessness; that therefore the doctrine of res ipsa loquitur is applicable and the burden is upon the defendant to prove that the said Carl S. Swilley was free from negligence.”
 
 [2]
 
 The defendant in answer categorically denied all material allegations, with an alternative plea of contributory negligence, assuming Draper to have been driving, or, in the further alternative, should it be established that Swilley was the driver, then that Draper acquiesced in the manner in which the car was being driven and assumed the risk incidental to the trip. Following trial on the merits there was judgment for the plaintiffs to the limit of liability under the policy ($10,000), the trial judge having found from the evidence that Swilley was driving the car, that a prima facie case of negligence and want of ordinary care was made out, and that “the doctrine of res ipsa loquitur clearly applied.” The case is now before us on a writ of certiorari to review the judgment of the Court of Appeal, which affirmed the district court. See 91 So.2d 94.
 

 The known facts are that early on the morning of May 27, 1954, passing motorists on Highway 61 (known as the Airline Highway, and connecting Baton Rouge and New Orleans) reported to police that an automobile was resting on its top, submerged in a canal adjacent to the highway near Sorrento, with only the wheels visible above the water. When the car had been righted and pulled from the canal the bodies of two men were discovered inside
 
 *549
 
 and were later identified as those of Swilley and Draper; Swilley’s body was in a seated position under the steering wheel and that of Draper was “crumpled up” under the dashboard in front of the adjoining seat. It was found that their wrist watches had stopped shortly after 2:30 a. m., and that death had been caused by drowning. Both men lived in Baton Rouge, worked as salesmen-collectors for the same mercantile company, and were often together on business and pleasure; but their whereabouts between 5 :30 p. m. the previous day and the time of the accident is unexplained and unknown. The Airline Highway then consisted of only two concrete lanes, one for northbound and one for southbound traffic, but preparations were underway to construct two additional lanes destined to handle southbound vehicles and dirt for that project had been dumped alongside the west side of the highway for the roadbed base. Some rain had fallen that night and the dirt shoulders were soft and muddy. There were no witnesses to the accident, but tire tracks at the scene showed that Swilley’s car, traveling toward New Orleans, had run off the concrete onto the west (its right hand) shoulder, had traveled southward along that shoulder for a distance of 118 feet, both wheels being off the highway; had got back on the concrete and at a 45° angle had proceeded to the opposite side and onto the other shoulder — from which it had apparently flipped over into the canal, its front end pointing back toward the highway.
 

 Counsel for defendant argue here that the ruling of the lower courts — i. e., the mere fact of the car leaving the highway while under the complete dominion and control of defendant’s assured created a prima facie case for plaintiffs and, under the rule “res ipsa loquitur,” shifted to defendant the burden of proving its insured free of negligence — points up an irreconcilable conflict among two lines of Louisiana cases, and that the weight of better authority holds the doctrine inapplicable in guest passenger cases where, as here, the accident could have been caused by the fault of a third party. Plaintiffs’ counsel, on the other hand, submitting that the lower courts correctly found from the facts that Swilley was the driver of the car,
 
 [3]
 
 contend that an automobile carefully operated will, under ordinary circumstances, remain on the traveled portion of the highway, and that when a car is found to have followed the pattern here shown the inference may be drawn of negligent operation.
 

 
 *551
 
 A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is “that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant’s duty.”
 
 [4]
 

 Many instances are noted where the doctrine, though invoked, has no application; e. g., it is obvious that when there is, in addition to evidence disclosing the physical cause of the accident, either direct or circumstantial evidence which conclusively repels any inference of negli- ' gence that might otherwise arise, the plaintiff is deprived of any practical advantage from the rule. Nor is a resort to res ipsa loquitur warranted in cases where the existence of negligence is an immaterial issue,
 
 *553
 
 such as cases dealing with food and drink for human consumption,
 
 [5]
 
 since the manufacturer insured his product to be free from taint or injurious substances; or where the opposing parties or their witnesses are present and direct testimony as to the cause of the accident is available;
 
 [6]
 
 and an accident due to a collision between two private vehicles is not, in the absence of' further proof, a proper occasion for application of the rule, since it is improper to assume that one driver, rather than the other, was negligent, or to ignore the fact that the collision might have been caused by factors outside the control of either.
 
 [7]
 
 It necessarily follows that the maxim is not appropriate where, from the nature of the facts, it is reasonable to assume that the actions of the defendant may have been caused by the negligence of another.
 
 [8]
 
 In the case of Morales v. Employers’ Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated: “It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked.” 202 La. at page 769, 12 So.2d at page 808.
 

 In the instant case, the evidence warranted the finding that Swillcy was driving his car when the accident took place. However, there is nothing to show what caused his car to leave the pavement; it may have been forced off the narrow highway by oncoming traffic, or by a skidding motorist alongside, and the fact of his having driven onto the adjoining shoul
 
 *555
 
 der does not of itself warrant an inference of negligence since it does not exclude other reasonable hypotheses consistent with proper driving on Swilley’s part. It occurs to us that the very fact that all four wheels of the car were off the highway is a circumstance from which it would be fair to infer that a car approaching in Swilley’s lane “of traffic forced him completely off the pavement as an alternative to a collision. Nor can we agree with our learned brothers of the Court of Appeal, who thought that the most plausible explanation of the car having traveled 118 feet on the shoulder then swerved diagonally across the road, was that the driver was going too fast or that he did not have his car under proper control. The record contains nothing to indicate the speed of the car, but a distance of 118 feet on the shoulder is not inconsistent with prudent driving — which dictates that when a car has left the paved highway it is better practice not to try to immediately regain the pavement, but to travel along the shoulder until it is felt safe to attempt the maneuver. The evidence does disclose that Swilley’s tire tracks in the soft mud of the shoulder were three or four inches deep; he necessarily had to insure sufficient momentum to lift the car from the shoulder over the edge of the concrete slab so as to regain the pavement; a wheel may have locked with the edge, and the additional power applied to free the wheel may have caused the car to leap forward so that Swilley lost control — yet those acts cannot be branded as negligence since a prudent and careful driver would very possibly have acted in the same manner under like circumstances. No causal connection between the accident and some phase of negligent operation of the car has been shown,, and it is our opinion that when all the facts are considered, this case is not one in which the doctrine of res ipsa loquitur is applicable.
 

 For the reasons assigned, the judgments of the district court and of the Court of Appeal are annulled and set aside, and it is now ordered that the suit be dismissed at plaintiffs’ cost.
 

 [1]
 

 . These survivors are his widow, Mary Elizabeth Draper, and two minors by a previous marriage, Charles Ray Draper, Jr., and Carolyn Draper, represented by
 
 *547
 
 their mother, Marion Palmer Larkin, to whom letters of Guardianship have been duly issued by the Probate Court of Alabama.
 

 [2]
 

 . By amended petition, in the alternative to their allegation that the doctrine of res ipsa loquitur is applicable, plaintiffs alleged specific acts of negligence and carelessness on the part of Oarl g. Swilley in the operation of the automobile, these being excessive speed and failure to keep the car under control.
 

 [3]
 

 . These facts were, aside from the position of Swilley’s body in the car, that Swilley, according to his wife’s testimony, was driving when he left home the previous afternoon at 5:30 p. m.; that he always drove Ms own car; and that only once, some five years prior to the accident, had she seen Draper drive her husband’s automobile.
 

 [4]
 

 . Annotation, 53 A.L.R. Res Ipsa Loquitur —Nature, 1494, at page 1499; see, also, Annotation, 59 A.L.R. beginning at page 480; 22 A.L.R. Annotation at- page 1471 et seq.; . 38 Am.Jur. 933, Verbo Negligence, Sec. 290; Idem. 989, see. 295 et seq.
 

 [5]
 

 . Doyle v. Fuerst & Kramer, 129 La. 838, 56 So. 903, 40 L.R.A.,N.S., 480; Hill v. Louisiana Coca-Cola Bottling Co., La. App., 170 So. 45; McLehan v. Loft Candy Stores, La.App., 172 So. 367; Kelly v. Ouachita Dairy Dealers Cooperative Ass’n, La.App., 175 So. 499; Ogden v. Rosendale Inn, La.App., 189 So. 162; Dye v. American Beverage Co., La.App., 194 So. 438; Hollis v. Ouachita Coca-Cola Bottling Co., La.App., 196 So. 376; Malone, Res Ipsa Loquitur and Proof by Inference, 4 La.L.Rev. 70, 97 — 98.
 

 [6]
 

 . Hamburger v. Katz, 10 La.App. 215, 120 So. 391; Monkhouso v. Johns, La. App., 142 So. 347; Goner v. Anding, La. App., 146 So. 704; Dunaway v. Maroun, La.App., 178 So. 710; Levy v. Indemnity Ins. Co. of North America, La.App., 8 So. 2d 774; Storey v. Parker, La.App., 13 So. 2d 88; Bourg v. Aetna Casualty & Surety Co., La.App., 77 So.2d 131; Blashfield Cyclopedia of Automobile Law and Practice, See. 6046.
 

 [7]
 

 . Malone, Res Ipsa Loquitur and Proof by Inference, op. cit. supra note 5, at 104; Dunaway v. Maroun, La.App., 178 So. 710.
 

 [8]
 

 . Blashfield, Cyclopedia of Automobile Law and Practice, Sec. 6046; Malone, Res Ipsa Loquitur and Proof by Inference, op. cit. supra note 5, at p. 105; Dunaway v. Maroun, La.App., 178 So. 710; Brown v. Klein, 230 App.Div. 681, 245 N.Y.S 654. See, also, Dorman v. T. Smith & Son, 223 La. 29, 64 So.2d 833.