395 So.2d 774 (1981)
Mrs. Ruby WHITE et vir.
v.
Dr. E. Edward McCOOL et al.
No. 80-C-2280.
Supreme Court of Louisiana.
March 2, 1981.
Rehearing Denied April 6, 1981.
*775 Arthur Cobb, Ltd., Baton Rouge, for plaintiffs-applicants.
W. Luther Wilson, Taylor, Porter, Brooks & Phillips, Baton Rouge, for defendants-respondents.
CALOGERO, Justice.
Mrs. Ruby White sued Dr. Edward McCool in a medical malpractice action to recover damages arising from the doctor's alleged negligence in failing to properly suture Mrs. White's liver following a laceration which occurred in the course of the removal of her gall bladder. The trial judge and the Court of Appeal denied recovery and we granted writs. White v. McCool, 393 So.2d 744 (1980).
On February 8, 1977, Dr. Edward McCool performed surgery to remove plaintiff's gall bladder. The gall bladder rests on the liver. During the course of the removal of the gall bladder, plaintiff's liver was lacerated, apparently by a retractor used in the surgery. (There is no allegation that defendant was at fault in lacerating the liver, an apparently not infrequent occurrence in gall bladder surgery. Occurrence of the laceration does not form part of plaintiff's claim.) Defendant closed the laceration of the liver by suturing it. He observed the area for a period of time to assure that the liver was no longer bleeding, closed the primary incision and sent his patient to the recovery room.
While plaintiff was in recovery she was found to be bleeding internally. She was brought back into surgery and the primary incision was reopened whereupon it was determined that the liver was bleeding at the site of the earlier sutures. Defendant again sutured the laceration and reclosed the primary site. Progress thereafter was entirely normal.
The trial court's dismissal of plaintiff's lawsuit followed a finding that there was nothing in the record to indicate "that he [defendant] failed to exercise the degree of care and possess the degree of knowledge or skill ordinarily exercised and possessed by a physician within his medical specialty." The Court of Appeal's affirmance of the judgment of the trial court included the additional finding that if the doctrine of res *776 ipsa loquitur did apply, then defendant had effectively rebutted any presumption raised by the doctrine by showing that he exercised due care and skill.
We granted writs to determine whether the doctrine of res ipsa loquitur was applicable in this case, concerned that if it was so applicable the Court of Appeal may have erred in concluding that defendant had satisfactorily explained the occurrence and shown that he was free of fault.
The pertinent statutory provision, enacted in 1975,[1] places upon the plaintiff in a medical malpractice action the burden of proving "the degree of care ordinarily practiced by physicians and dentists within the involved medical specialty," R.S. 9:2794(A)(1); "that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill," R.S. 9:2794(A)(2); and "that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care plaintiff suffered injuries that would not otherwise have been incurred," R.S. 9:2794(A)(3). The statute also provides that "[t]he jury shall be further instructed that injury alone does not raise a presumption of the physician's or dentist's negligence," R.S. 9:2794(C). That provision is immediately succeeded by one which states that "[t]he provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable." R.S. 9:2794(C).
Plaintiff argues that the doctrine of res ipsa loquitur is applicable and thus under R.S. 9:2794(C) the other provisions of the statute relative to plaintiff's burden do not apply. Rather, the burden is on the defendant to establish his lack of negligence.
The landmark case in our jurisprudence concerning the doctrine of res ipsa loquitur is Larkin v. State Farm Mutual Automobile Ins. Co., 233 La. 544, 97 So.2d 389 (1957). Therein, we stated:
"A determination of a proper instance for application of the principle of res ipsa loquitur has been the subject of volumes of discussion by learned jurists and legal scholars, who have been at pains to point out that the maxim means only that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference; that the rule rests for its justification upon the common experience *777 that accidents from such causes do not commonly occur in the absence of negligence; and that it is the lack of direct evidence indicating negligence on the part of the defendant as the responsible human cause of a particular accident which actually furnishes the occasion and necessity for invoking the rule in its strict and distinctive sense. It is generally conceded that res ipsa loquitur in no way modifies the rule that negligence will not be presumed. The application of the rule does not, therefore, dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage. When all the evidence is in, the question is still whether the preponderance is with the plaintiff. All that is meant by res ipsa loquitur is `that the circumstances involved in or connected with an accident are of such an unusual character as to justify, in the absence of other evidence bearing on the subject, the inference that the accident was due to the negligence of the one having control of the thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that, unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty.' [citation omitted.]
* * * * * *
"In the case of Morales v. Employers' Liability Assur. Corp., 202 La. 755, 12 So.2d 804, this Court aptly stated: `It is the duty of the plaintiff to prove negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it can not be invoked.' 202 La. at page 769, 12 So.2d at page 808."
After reviewing the records and exhibits in this case we conclude that the facts and evidence introduced do not establish a situation in which defendant's negligence is the most plausible explanation for why plaintiff was bleeding internally after the original operation. Had the facts been more self evident (i.e., a surgical instrument being left in the abdomen) or had there been produced expert or other evidence suggesting, for instance, that a sutured liver doesn't bleed absent improper suturing or improper suturing technique (the latter being something that this Court cannot divine) our conclusion would be different.
Res ipsa loquitur is thus not applicable in this case. The normal plaintiff's burden under R.S. 9:2794 (to establish the standard of care ordinarily exercised by physicians within the involved medical specialty under similar circumstances, and that the defendant failed to meet that standard of care) is applicable. And plaintiff has not borne that burden.
No evidence was produced to show that defendant was negligent or that his negligence caused the bleeding. On the contrary, the members of the medical review panel[2] testified that defendant was a competent and skillful surgeon who in their opinion had not acted negligently in the case.
Under these circumstances we do not find plaintiff has borne her burden under R.S. *778 9:2794. Nor are we able to conclude that the trial court and the Court of Appeal were both clearly wrong in their determination that defendant did not act negligently. Absent such findings we are compelled to affirm the decisions of the lower court. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

Decree
For the foregoing reasons the judgments of the district court and the Court of Appeal are affirmed.
AFFIRMED.
DIXON, C. J., dissents with reasons.
WATSON, J., dissents.
LEMMON, J., concurs and assigns reasons.
LEMMON, Justice, concurring.
Plaintiff's circumstantial evidence is insufficient because judges do not know that recurrence of bleeding after a liver has been sutured indicates negligence in performing the suturing.
Defendant doctor admitted that plaintiff might not have "rebled" if he had realized how deep the laceration was and had employed a different suturing procedure. However, he explained that he did not spread the liver apart to determine whether the laceration was deeper than it appeared to be and did not use heavier sutures, because probing the wound or using heavier sutures would likely have caused substantial trauma to the liver.
The explanation seems to be plausible. More significantly, however, none of the three doctors on the medical review panel stated that the procedure used was substandard or that one could infer substandard conduct from the recurrence of the bleeding after the initial suturing.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
The majority fails to explain why it was not negligence to sew up the liver in such a way that it continued to bleed so badly that plaintiff required a second operation to repair the inadequate suturing.
NOTES
[1] R.S. 9:2794 as enacted in 1975 by Act No. 807 of the Legislature (an amendment, by Act No. 545 of 1979 took place after plaintiff's surgery and consisted of only minor changes in the statute) provides in pertinent part:

"A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq., or a dentist licensed under R.S. 37:751 et seq., the plaintiff shall have the burden of proving:
(1) the degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians or dentists practicing in the same community or locality to that in which the defendant practices; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty.
(2) that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill; and
(3) that as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
B. Any party to the action will have the right to subpoena any physician or dentist either for a deposition and/or testimony for trial to establish the degree of knowledge or skill possessed or degree of care ordinarily exercised as described above without obtaining the consent of the physician or dentist who is going to be subpoenaed. The fee of the physician or dentist called for deposition and/or testimony under this Section will be set by the court.
C. In medical malpractice actions the jury shall be instructed that the plaintiff has the burden of proving, by a preponderance of the evidence, the negligence of the physician or dentist. The jury shall be further instructed that injury alone does not raise a presumption of the physician's or dentist's negligence. The provisions of this Section shall not apply to situations where the doctrine of res ipsa loquitur is found by the court to be applicable."
[2] Under the authority of R.S. 40:1299.47, all malpractice claims against health care providers must be initially reviewed by a medical review panel consisting of three physicians licensed to practice medicine in Louisiana and one attorney. The attorney is selected through a designated procedure by the clerk of court of the Louisiana Supreme Court. One physician is chosen by plaintiff, one by defendant and the two physicians select the third one. Each selected physician is required to serve on the panel.