GENEVIEVE MOORE      *      NO. 2023-C-0041

VERSUS      *

     COURT OF APPEAL

BOARD OF SUPERVISORS OF    *

LOUISIANA STATE      FOURTH CIRCUIT

UNIVERSITY AND      *

AGRICULTURE AND      STATE OF LOUISIANA

MECHANICAL COLLEGE    * * * * * * *

O/B/O LSU HEALTH

SCIENCES CENTER-NEW

ORLEANS AND SANJAY

KAMBOJ, MD

ON SUPERVISORY WRIT FROM THE
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2020-01576, DIVISION "J"
Honorable D. Nicole Sheppard,
* * * * * *
**Judge Karen K. Herman**
* * * * * *

(Court composed of Judge Roland L. Belsome, Judge Joy Cossich Lobrano, Judge Karen K. Herman)

Richard T. Gallagher, Jr.
GALLAGHER, WESTHOLZ & POTTER, LLC
111 Veterans Blvd., Suite 1400
Metairie, Louisiana 70005
     COUNSEL FOR PLANTIFF/RESPONDENT

Jeff Landry
Attorney General
Phyllis E. Glazer
Assistant Attorney General Appellate Counsel
LOUISIANA DEPARTMENT OF JUSTICE
1885 North Third St., 3rd Floor
Baton Rouge, Louisiana 70802

Renee C. McKay
Assistant Attorney General Trial Counsel
LOUISIANA DEPARTMENT OF JUSTICE
1450 Poydras St., Suite 900
New Orleans, Louisiana 70112
     COUNSEL FOR DEFENDANTS/RELATORS

        **WRIT GRANTED; JUDGMENT REVERSED;**
          **SUMMARY JUDGMENT GRANTED**
             **MAY 4, 2023**

KKH
RLB
JCL

Relators-Defendants, the Board of Supervisors of Louisiana State University and Agricultural Mechanical College and Sanjay Kamboj, M.D. (collectively, "Relators"), seek supervisory review of the trial court's October 26, 2022, judgment, which denied their motion for summary judgment. For the following reasons, we grant the writ application, reverse the trial court's judgment, and grant summary judgment in favor of Relators.

## FACTS AND PROCEDURAL HISTORY

On February 17, 2020, Respondent-Plaintiff, Genevieve Moore ("Respondent"), filed a petition against Relators, alleging that on March 2, 2016, she presented to LSU and Sanjay Kamboj, M.D., ("Dr. Kamboj") "for treatment of nasal congestion, mucus, aches, cough, fever and trouble breathing." She was diagnosed with influenza, asthma, and acute upper respiratory infection. Respondent alleged that Dr. Kamboj ordered that she receive several injections, including a "solumedrol injection" to be administered by a nurse. According to Respondent, she experienced "sharp and substantial pain in her shoulder," when the solumedrol was administered. Respondent asserted that the medical staff was immediately notified, after which, she was given Tylenol and allowed to remain

1

"in the clinic for 20 minutes after the injections." Respondent claimed she continually sought treatment for shoulder pain and prior to filing the petition obtained an MRI, which revealed a rotator cuff tear for which she will undergo surgery. Respondent alleged that Relators breached the applicable standard of care by failing to train and supervise the nurse, by failing to adequately perform the injection, and by failing to properly obtain consent from Respondent.

Before filing suit, the medical review panel ("MPR") initiated by Respondent's complaint unanimously rendered an opinion finding that, "[t]he evidence does not support the conclusion that Dr. Sanjay Kamboj failed to meet the applicable standard of care as charged in the complaint." The MPR further concluded that "[t]he steroid shot was indicated for [Respondent's] asthma flare."

On February 8, 2022, almost two years after Respondent filed her petition, Relators filed a motion for summary judgment supported by the medical review panel's opinion, asserting that Respondent has not identified an expert that will provide testimony on Respondent's behalf to establish the necessary elements of her claim, pursuant to La. R.S. 9:2794; and that this is not a matter wherein a layperson can infer negligence without expert testimony. Relators also noted that in January 2015, a year prior to the steroid injection, Respondent had injured her right shoulder when she fell against a dresser.

In opposition to Relators' motion for summary judgment, Respondent argued that expert testimony is not required because this is not a complicated medical case requiring expert testimony. She also argued that the doctrine of *res ipsa loquitur* is applicable to prove Relators' negligence because following a "simple injection" Respondent had immediate and unusual pain, required Tylenol, and was instructed to sit in the clinic for twenty minutes. Respondent thus claims

these facts give "rise to an inference that someone was negligent." She further argued there was causation because she complained of pain immediately after injection.

The motion came for hearing before the trial court on October 13, 2022. The trial court denied the motion for summary judgment from the bench. Judgment to that effect was executed on October 26, 2022. This writ application followed.

## DISCUSSION

### *Standard of Review*

Appellate courts review the grant or denial of a motion for summary judgment *de novo. In re Medical Review Complaint by Downing*, 2021-0698, p. 8 (La. App. 4 Cir. 5/26/22), 341 So.3d 863, 869 (citing *Indep. Fire Ins. Co. v. Sunbeam Corp.*, 1999-2181, 1999-2257, p. 7 (La. 2/29/00), 755 So.2d 226, 230). "Because [this Court] review[s] a motion for summary judgment *de novo,* [this Court] look[s] at the facts and evidence in the record [on review], inspecting it without regard or deference to the judgment of the trial court or its reasons for judgment." *Cusimano v. Port Esplanade Condominium Ass'n, Inc.,* 2010-0477, p. 4 (La. App. 4 Cir. 1/12/11), 55 So.3d 931, 934.

In *Mapes v. State through Bd. of Supervisors of Louisiana State Univ. Agric. & Mech. Coll.*, 2021-0166 (La. App. 4 Cir. 3/2/22), 336 So.3d 494, this Court summarized the law on summary judgment, stating:

> "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). "The procedure is favored and shall be construed to accomplish these ends." *Id*. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the

motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).

"The burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden ... does not require him to negate all essential elements of the adverse party's claim, action, or defense." *Id*. Instead, the moving party must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. Then, "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Maddox v. Howard Hughes Corp.*, 19-0135, p. 5 (La. App. 4 Cir. 4/17/19), 268 So.3d 333, 337. " 'A fact is material when its existence or nonexistence may be essential to the plaintiffs [sic] cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Id*. (quoting *Chapital v. Harry Kelleher & Co., Inc.*, 13-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81). "Whether a fact is material is a determination that must be made based on the applicable substantive law." *Maddox*, 19-0135, p. 5, 268 So.3d at 337.

*Mapes*, 2021-0166, pp. 4-5, 336 So.3d at 497.

### *Burden of Proof/Medical Malpractice*

"A plaintiff must prove the following three elements by a preponderance of the evidence to prevail in a medical malpractice action: (1) the applicable standard of care expected of physicians in his/her medical specialty, (2) a violation of that standard of care, and (3) a causal connection between the alleged negligent treatment and the plaintiff's injuries." *In re Med. Rev. Complaint by Downing*, 2021-0698, p. 9, 341 So.3d at 870 (citing *Deruise-Pierce v. Univ. Healthcare Sys.*,

*L.C.*, 2018-0160, pp. 7-8, (La. App. 4 Cir. 10/24/18), 258 So.3d 150, 154-55 (citations omitted)).

"Expert testimony is generally required to establish the applicable standard of care and whether or not that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony." *Schultz v. Guoth,* 2010-0343, p. 7 (La.1/19/11), 57 So.3d 1002, 1006–1007 (citing *Samaha v. Rau,* 2007-1726, pp. 5-6, 977 So.2d 880, 883; and *Pfiffner v. Correa,* 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228).

In *Pfiffner*, the Supreme Court stated:

> The jurisprudence has also recognized that there are situations in which expert testimony is not necessary. Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence.
> * * *
> Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under L[a][]R.S. 9:2794's requirements without medical experts....

*Pfiffner,* 94–0924, p. 9, 643 So.2d at 1233-1234 (internal citations omitted).

"The requirement of producing expert testimony is especially apt[] when … the defendants have filed summary judgment motions and supported such motions with expert opinion evidence that their treatment met the applicable standard of care." *Jordan v. Cmty. Care Hosp.*, 2019-0039, p. 13 (La. App. 4 Cir. 7/24/19), 276 So.3d 564, 577 (citations omitted). "In this context, the jurisprudence has routinely upheld the granting of a 'no-expert' motion for summary judgment." *Id.* (citing *Williams v. Memorial Med. Ctr.*, 2003-1806 (La. App. 4 Cir. 3/17/04), 870 So.2d 1044).

With regard to the doctrine of *res ipsa loquitur*, the Louisiana Supreme Court has opined:

> *Res ipsa loquitur* is a rule of circumstantial evidence which allows a court to infer negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury. *Spott v. Otis Elevator Co.,* 601 So.2d 1355, 1362 (La. 1992); *Cangelosi v. Our Lady of the Lake Regional Medical Center,* 564 So.2d 654, 664 (La. 1989), *on rehearing.* "The doctrine applies only when the facts of the controversy 'suggest negligence of the defendant, rather than some other factor, as the most plausible explanation of the accident.'" *Montgomery v. Opelousas General Hosp.,* 540 So.2d 312, 320 (La. 1989) (citing *Walker v. Union Oil Mill, Inc.,* 369 So.2d 1043, 1048 (La. 1979); *Boudreaux v. American Insurance Co.,* 262 La. 721, 264 So.2d 621, 636 (1972)). "Application of the doctrine is defeated if an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence." *Id.*

*Salvant v. State*, 2005-2126, p. 18 (La. 7/6/06), 935 So.2d 646, 659. Moreover, under this doctrine, negligence is not presumed and does not dispense with the requirement for a plaintiff to prove negligence in a malpractice action. *See White v. McCool*, 395 So.2d 774, 777 (La. 1981) (citing *Larkin v. State Farm Mutual Automobile Ins. Co.*, 97 So.2d 389, 391-392 (1957)). If *res ipsa loquitur* is not applicable, the plaintiff must bear his/her normal burden pursuant to La. R.S. 9:2794, i.e., to "establish the standard of care ordinarily exercised by physicians within the involved medical specialty under similar circumstances, and that the defendant failed to meet that standard of care." *White*, 395 So.2d at 777.

*Analysis*

Relators argue that the trial court erred in denying their motion for summary judgment because Respondent offered no expert testimony and therefore failed to present sufficient evidence to raise a genuine issue of material fact for trial. We agree.

The allegations of negligence asserted by Respondent, i.e. failure to train or supervise a medical provider; improper administration/allowance of administration of a steroid injection; and failure to properly obtain consent, require expert testimony to defeat summary judgment. *See Green v. Buell*, 2016-0873, p. 8 (La. App. 4 Cir. 4/5/17), 215 So.3d 715, 720 (affirming summary judgment where the plaintiff failed to provide expert testimony on his lack of informed consent claim); *Mass v. Bartholomew*, 2009-0660, pp. 2-5 (La. App. 4 Cir. 12/9/09), 28 So.3d 520, 521, 523 (finding expert medical testimony was required where the plaintiff, who underwent surgeries for herniated discs, alleged the hospital and doctor breached the applicable standard of care by failing to obtain informed consent and by failing to adequately train and supervise employees and physicians); *Salvador v. Main St. Fam. Pharmacy, L.L.C.*, 2017-1757, p. 5 (La. App. 1 Cir. 6/4/18), 251 So.3d 1107, 1112 (stating that the "appropriate techniques and parameters for performing" a spinal injection is "beyond the province of a lay person without the aid of expert testimony").

In support of their motion for summary judgment, Relators attached the MRP opinion; Respondent's discovery responses; the petition for damages; and a certified copy of the LSU medical records.

As noted above, the MRP unanimously found Dr. Kamboj did not breach the standard of care. The discovery responses provide Respondent "has not determined what experts will be retained to testify at trial."

The medical records show that over a year before the steroid injection, on January 15, 2015, Plaintiff "fell against a dresser and struck the right side of her right shoulder" and was seen by an internist at LSU, Dr. Marcelle Rousseau, the same day. Respondent reported that after taking Ibuprofen 800mg there was no

7

improvement of pain. Dr. Rousseau's examination revealed muscle spasms of the right trapezius muscle. Respondent was diagnosed with acute shoulder pain, prescribed muscle relaxers, and was ordered to perform range-of-motion exercises.

The medical records also provide that on March 2, 2016, during her visit with Dr. Kamboj, Respondent was diagnosed with "influenza, asthma, and an acute upper respiratory infection and ordered a steroid injection," and a nurse administering "a Solu-Medrol 125 mg intramuscular injection in [Respondent's] right deltoid." It also shows that twenty minutes after receiving the steroid injection on March 2, 2016, there was no evidence of local or systemic reaction to the injection.

The medical records further provide that Respondent's treating orthopedist, Dr. Michael Hartman, did not connect Respondent's tear of her right rotator cuff with the steroid injection. Dr. Hartman recommended surgery to repair the rotator cuff on February 1, 2017.

In support of the opposition to the motion for summary judgment, Respondent included the following exhibits: her own affidavit; select pages of the LSU medical records; and the MRI findings by Dr. Hartman of Respondent's right shoulder. Dr. Hartman indicated the MRI revealed a "full thickness, partial width, anterior, insertional tear of the supraspinatus with extension into the subscapularis tendon insertion and proximal interstitial extension."[1]

When Relators offered the unanimous opinion of the MRP, finding that there was no breach of the standard of care, coupled with the discovery responses showing that Respondent has failed to produce expert evidence that the standard of

---

[1] Dr. Harman also noted "moderate subscapularis tendinopathy, minor infraspinatus insertional tendinopathy, and moderate subacrominal/subdeltoid bursitis" and "minor ostearthrosis and type II acromion was present."

care was breached – it was then incumbent on Respondent to produce evidence proving that she can meet her burden of proof at trial. *See Battaglia v. Chalmette Med. Ctr., Inc*., 2012-0339, p. 6 (La. App. 4 Cir. 10/17/12), 126 So. 3d 524, 527.

"A defendant-health care provider does not have the burden of disproving medical malpractice; rather, a defendant-health care provider only must point out that the plaintiff cannot support his claim." *Mapes,* 2021-0166, p. 5, 336 So.3d at 498 (citing *Jordan*, 19-0039, p. 12, 276 So.3d at 576). "Once a defendant-health care provider has established an absence of factual support for an essential element of the plaintiff's claim, the plaintiff must come forth with evidence to preclude summary judgment." *Id*. Here, because Respondent failed to provide an expert to establish Relators breached the applicable standard of care, she failed to produce sufficient evidence that she can satisfy the elements of her medical malpractice claims at trial.

Moreover, this is not a case where the alleged medical malpractice is such that it is so obvious that a lay person can infer negligence without the guidance of expert testimony. Instances in which expert testimony is not required do not represent the majority of cases and only have been found by Louisiana courts when the medical provider does an obviously careless act, like "fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence." *Pfiffner,* 94–0924, p. 9, 643 So.2d at 1233. The allegations of malpractice asserted by Respondent against Relators regarding improper administration of an injection, failure to supervise/train, and failure to obtain consent do not fall within the narrow scope of the obvious-negligence exception.

9

Also, the doctrine of *res ipsa loquitur* is not applicable. *Res ipsa loquitur* does not dispense with Respondent's requirement to prove negligence, the doctrine only allows for an inference of negligence of a defendant when based on the facts of the case, the defendant's negligence, more probably than not, caused the injury, not when an injury may have resulted from more than one cause. *See Salvant*, 2005-2126, p. 18, 935 So.2d at 659; and *White*, 395 So.2d at 777. Respondent's allegation of immediate pain in her shoulder after receiving the steroid injection does not establish Relators were negligent in administering the injection nor does it show that the steroid injection caused Respondent to have a torn rotator cuff. In fact, there is evidence in the record that Respondent injured her shoulder from falling against the dresser a year before the steroid shot. Because there is a plausible alternative explanation for Respondent's shoulder injury other than Relators' negligence, the "application of the doctrine [of *res ipsa loquitor*] is defeated." *Salvant*, 2005-2126, p. 18, 935 So.2d at 659.

Upon *de novo* review of the record, we find that the trial court erred in denying the motion for summary judgment. Relators presented a *prima facie* case on summary judgment with expert opinion evidence that their treatment met the applicable standard of care, which shifted the burden to Respondent to produce expert medical testimony to support her claim of malpractice. Because Respondent failed to do so, she cannot show she would be able to meet her evidentiary burden of proof at trial. Moreover, this case does not involve "obvious negligence" such that an expert would not be required and the doctrine *res ipsa loquitur* does not apply where an inference that an injury was due to a cause other than Relators' negligence could reasonably be drawn.

Relators established that there is an absence of factual support for an essential element of Respondent's malpractice claim and Respondent has failed to rebut this showing. As such, Relators are entitled to summary judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, we grant the writ application, reverse the trial court's October 26, 2022 judgment, and grant the motion for summary judgment in favor of Relators.

**WRIT GRANTED; JUDGMENT REVERSED;**
**SUMMARY JUDGMENT GRANTED**

11